UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION at ASHLAND

| | |
|---|---|
| KENNETH HAMPTON, ) | |
| ) | |
| Petitioner, ) | Civil Action No. 0:11-CV-075-HRW |
| ) | |
| V. ) | |
| ) | **MEMORANDUM OPINION** |
| J. C. HOLLAND, Warden, ) | **AND** |
| ) | **ORDER** |
| Respondent. ) | |

**       **       **       **       **

Petitioner Kenneth Hampton ("Hampton"), is presently confined at the Federal

Correctional Institution at Ashland, Kentucky ("FCI-Ashland"). Hampton has

submitted a pro se Petition for Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2241,

concerning his conviction on May 27, 2009, for a disciplinary charge he received on

while he was an inmate at the Federal Detention Center in Philadelphia, Pennsylvania

("FDC-Philadelphia"). Hampton does not state specifically what relief he seeks; the

the Court presumes that he is requesting the restoration of 40 days of Good Time

Credit ("GTC") on his sentence that was part of the penalty he received for being

found guilty of the disciplinary charge. Respondent having filed a response to

Hampton's § 2241 petition [R. 12], this matter is ripe for review. For the reasons

stated below, the Court concludes that Hampton is not entitled to any relief and will dismiss his § 2241 petition.  The rationale for this decision is set out below.

## FACTUAL BACKGROUND

Hampton is currently serving an 84-month sentence for being convicted of conspiracy to manufacture and transfer counterfeit money, in violation of 18 U.S.C. § 371, and of manufacturing counterfeit currency with intent to defraud and aiding and abetting, in violation of 18 U.S.C. §§ 471 and 2.  His projected release date is March 21, 2016.  From February 26, 2009, to April 6, 2010, Hampton was an inmate at FDC-Philadelphia.  While there, he was found guilty of a disciplinary prison offense.  A portion of his penalty included the loss of 40 days of GTC.

### A.    Incident Report and conviction

On May 12, 2009, a shakedown of Unit 5-South at FDC Philadelphia was conducted, which included the search of Hampton's cell.  During the search of his cell, the Correctional Officer found several razor blades on the back of a mirror located within the cell; the razor blades had been wrapped with tape at the end to form a handle.  [Declaration of Daniel Kulick, ¶¶7, 8, and Attachment B thereto ( Incident Report) - Exhibit 2 to Response to Petition for Writ of Habeas Corpus] - D.E. No. 12.  On this same date, May 12, 2009, Hampton and his cellmate, Rene Lukner, were charged in separate Incident Reports with Possession, Manufacture, or

2

Introduction of a Weapon, a Code 104 violation. A copy of the Incident Report was delivered to Hampton on the same day at 7:00 p.m. [Declaration of Daniel Kulick, ¶¶7, 8, and Attachment B thereto ( Incident Report)] - Exhibit 2 to Response to Petition for Writ of Habeas Corpus - D.E. No. 12.

The investigation of the Incident Report commenced on May 12, 2009. Hampton was advised of his rights and was provided with an opportunity to provide a statement and/or request witnesses. Hampton stated to the investigating Officer that: 1) "he had no idea" about the razor blades; 2) that the razor blades were "not his;" 3) that he was too short to reach the top of the mirror; 3) and to check the fingerprints. During the investigation, Hampton did not wish to call any witnesses. The investigating officer concluded that the charge, Code 104, was warranted as written and referred it to the Unit Disciplinary Committee (hereinafter "UDC") for a hearing. [Declaration of Daniel Kulick, ¶ 9, and Attachment B thereto ( Incident Report; Part III - Investigation)] - Exhibit 2 to Response to Petition for Writ of Habeas Corpus - D.E. No. 12.

On May 15, 2009 the UDC held a hearing on the charges in the Incident Report. During the UDC hearing, Hampton was once again provided with an opportunity to comment on the incident. He made the following statement: 1) "I

3

don't know why my cellie [Rene Lukner] didn't say they were his;" 2) "They aren't mine;" 3) and "He uses them to cut food. Check his hands they have cuts on the side." The UDC referred the charges to the DHO for a hearing. The UDC decided to refer the charges to the DHO because the sanctions for 100 level Codes cannot be imposed at the UDC level.[1] If found guilty by the DHO, the UDC recommended sanctions of disciplinary segregation, a loss of Good Time Credit (hereinafter "GTC"), and loss of visiting, commissary, phone and e-mail privileges. [Declaration of Daniel Kulick, ¶ 10, and Attachment B thereto ( Incident Report; Part II - Committee Action)] - Exhibit 2 to Response to Petition for Writ of Habeas Corpus - D.E. No. 12.

On May 15, 2009, Hampton was advised of his rights before the DHO. [Declaration of Daniel Kulick, ¶ 11, and Attachment D thereto (Inmate Rights at Discipline Hearing)] - Exhibit 2 to Response to Petition for Writ of Habeas Corpus - D.E. No. 12. On the same date, Hampton was advised of the charges (Code No. 104) and was asked whether he would like to have a staff representative and/or present a witness at the hearing. Hampton requested to have Case Manager B. Shoulders as a staff representative. [Declaration of Daniel Kulick, ¶ 11, and Attachment E thereto

---

[1] The various levels of BOP offenses are listed in 28 C.F.R. 541.13, Table 3. The most serious offenses (Greatest Category) are listed in Code Nos. 100-199; the next level of offenses (High Category) are listed in Code Nos. 200-299; the next level of offenses (Moderate Category) are listed in Code Nos. 300-399; and the final and lowest level of offenses (Low Moderate Category) are listed in Code Nos. 400-499.

(Notice of Discipline Hearing before the DHO & Duties of Staff Representative Form] - Exhibit 2 to Response to Petition for Writ of Habeas Corpus - D.E. No. 12.

The DHO hearing was conducted on May 27, 2009. Once again, Hampton was advised of his rights and was notified that the staff representative could not appear at the hearing. He was also advised that the hearing could be postponed so that he could obtain a staff representative. Hampton waived his request for a staff representative and stated that he was ready to proceed. He did not request any witnesses. [Declaration of Daniel Kulick, ¶ 12, and Attachment F thereto (DHO Report)] - Exhibit 2 to Response to Petition for Writ of Habeas Corpus - D.E. No. 12. Hampton denied the charges and stated the following: 1) "They [razor blades] were not mine." 2) "I didn't know they were there;" 3) and "I knew he had them to cut food." [Declaration of Daniel Kulick, ¶ 13, and Attachment F thereto (DHO Report)] - Exhibit 2 to Response to Petition for Writ of Habeas Corpus - D.E. No. 12.

The DHO considered the following evidence: 1) the Incident Report; 2) the Investigation; 3) a photo of the razor blades; and 4) the statements from Hampton. Following that review, the DHO concluded that on May 12, 2009, at approximately 11:35 a.m., in Unit 5-South, Cell 501, at FDC Philadelphia, Hampton committed the prohibited act of possessing a weapon in violation of Code 104. " [Declaration of Daniel Kulick, ¶ 14, and Attachment F thereto (DHO Report)] - Exhibit 2 to Response

to Petition for Writ of Habeas Corpus - D.E. No. 12. The DHO found that the greater weight of the evidence supported his finding. [Declaration of Daniel Kulick, ¶ 15, and Attachment F thereto (DHO Report)] - Exhibit 2 to Response to Petition for Writ of Habeas Corpus - D.E. No. 12.

On the same date, the DHO sanctioned Hampton to sixty (60) days of Disciplinary Segregation, a loss of forty (40) days of GTC, and the loss of visiting privileges for 60 days. [Declaration of Daniel Kulick, ¶ 17, and Attachment F thereto (DHO Report)] - Exhibit 2 to Response to Petition for Writ of Habeas Corpus - D.E. No. 12. Hampton was advised of his appellate rights, and on June 24, 2009, he received a copy of the DHO report. [Declaration of Daniel Kulick, ¶¶ 17, 18 and Attachment F thereto (DHO Report)] - Exhibit 2 to Response to Petition for Writ of Habeas Corpus - D.E. No. 12.

**B.    Administrative Remedies**

Hampton appealed his conviction of the Code 104 violation, first to the North East Regional Office ("NERO") in Administrative Remedy Appeal No.545329-R3 (also known as a "BP-10"). In this appeal, Hampton argued that he had submitted an inmate request to staff to the Duty Officer about the "things" his roommate had in the cell and what he was doing with them. Hampton alleged that three to four days before the razor blades were found, on May 12, 2009, an officer conducted a search

6

of the cell and removed his cellmate's contraband. Hampton argued that because a search had been done recently, he assumed that all of the contraband had been removed from his cell and he was not aware of the razor blades found on May 12, 2009. Hampton finally argued that the contraband belonged to his cellmate.

On August 27, 2009, NERO Regional Director J. L. Norwood responded to the BP-10 and denied Hampton's appeal because the razor blades were found in a common area of the cell and Hampton admitted to have knowledge of the razor blades by stating "I knew he had them to cut food." Director Norwood reminded Hampton that he has a responsibility to keep his area free of contraband and that it is reasonable to hold all cell occupants accountable for contraband found in a common area of the cell. Moreover, the Director concluded that there was substantial compliance with the Program Statement on Inmate Discipline; that his sanctions were not disproportionate with his misconduct; and that the DHO decision was properly based on the greater weight of the evidence. Further, Hampton was advised of the process to appeal the decision to the BOP's Central Office. [Declaration of Carlos J. Martinez, ¶ 5, and Attachment C thereto (Administrative Remedy 545329-R3) - Exhibit 1 to Response to Petition for Writ of Habeas Corpus - D.E. No. 12.

Hampton appealed this denial to the BOP's Central Office, identified as Administrative Remedy No.545329-A2 (also known as a "BP-11"). In his BP-11,

7

Hampton alleged the following: 1) that he was aware that his cell mate possessed the razor blades because he used them to cut food and thereby staff should have also been aware of the razor blades through the use of the surveillance cameras; 2) that he did not request another Staff Representative at the DHO hearing because it would have taken a long time to obtain approval; 3) that there allegedly was information from an informant that was not provided to him; 4) that the mirrors at FDC-Philadelphia are immovable and razor blades can only be placed on top of the mirror, not in the back; 5) finally, that he should have been present during the search of his cell.

On July 14, 2010, Harrell Watts, Administrator, National Inmate Appeals, denied Hampton's appeal for the following reasons: 1) that the DHO hearing was in compliance with Program Statement 5270.07, Inmate Discipline and Special Housing Units; 2) the DHO decision was based on the greater weight of the evidence as detailed in the DHO report; 3) that the evidence was sufficient to support the findings of the DHO; 4) and that the sanctions imposed were appropriate and in compliance with policy. In this decision, Hampton was reminded that pursuant to the Program Statement on Inmate Discipline, he was responsible for keeping his cell free of contraband. [Declaration of Carlos J. Martinez, ¶ 6, and Attachment D thereto (Administrative Remedy 545329-A2) - Exhibit 1 to Response to Petition for Writ of Habeas Corpus - D.E. No. 12.

C.    **Habeas Corpus Petition**

On July 15, 2011, Hampton filed the present § 2241 habeas corpus petition. In this action, he alleges that the evidence relied on by the DHO was insufficient to sustain a sanction for possessing a dangerous weapon in violation of Code 104. He states that the dangerous weapons (razor blades wrapped with tape to form a handle) were not found on his person or on his personal property. Hampton argues that his due process rights were violated by the DHO due to the following: 1) he was not appointed a staff representative; 2) the evidence was not fingerprinted; 3) no pictures of the evidence and area of the incident were taken; and 4) and no polygraph test was administered.

### DISCUSSION/ANALYSIS

Pursuant to 18 U.S.C. § 4042(a)(3), the BOP administers an inmate disciplinary process to promote the safe and orderly running of its correctional institutions. Upon arriving at a BOP facility, all inmates receive written notice of their rights and responsibilities, prohibited acts within the institution, and the specifics of the disciplinary system. The violation of a prohibited act carries sanctions corresponding to the severity of the offense. Sanctions range from disciplinary segregation, loss of GTC, loss of privileges, to verbal warnings. See 28 C.F.R . § 541.13, Prohibited acts and disciplinary severity scale.

9

The BOP disciplinary process is fully outlined in the Code of Federal Regulations, Title 28, Sections 541.10 through 541.23. These regulations dictate the manner in which disciplinary action may be taken when a prisoner violates or attempts to violate institutional rules. The first step in the disciplinary process requires the filing of an incident report and an official investigation pursuant to 28 C.F.R. § 541.14. Following the investigation, the matter is then referred to the UDC for a hearing pursuant to 28 C.F.R. § 541.15. If the UDC finds that the inmate has committed a prohibited act, it may impose minor sanctions. If the alleged violation is serious, or involves a prohibited act listed in the greatest severity category, the UDC must refer the matter to the DHO for a hearing. 28 C.F.R. § 541.15(h).

In *Wolff v. McDonnell*, 418 U.S. 539 (1974) the United States Supreme Court recognized that prison disciplinary proceedings are not part of a criminal prosecution and held that the full panoply of rights due to a defendant in such proceedings do not apply. However, the Court recognized that the Due Process Clause provides certain minimum protections for inmates facing the loss of good time credits as a disciplinary sanction. The Court held that when a prison disciplinary hearing may result in the loss of GTC credits, due process requires that the inmate receive: 1) written notice of the charges at least 24 hours in advance of the disciplinary hearing; 2) a written statement by the fact finder as to evidence relied on and reasons for the disciplinary

10

action; 3) an opportunity to call witnesses and present documentary evidence in his or her defense when doing so would not be unduly hazardous to institutional safety or correctional goals; and 4) the assistance of staff or a competent inmate when the inmate is illiterate or when the issues are complex. *Wolff v. McDonnell*, 418 U.S. at 556, 564-566. *See also Hatch v. Wilson*, No. 09-109-GFVT, 2009 WL 2877222 (E. D. Ky. 2009) citing *Allen v. Reese*, 52 F. Appx. 7,8 (8th Cir.2002) (holding that federal prisoner's right to due process was satisfied, as he was given (I) written notice of the charges against him, (ii) the right to call witnesses, and (iii) a written report of the DHO's decision).

Consistent with the minimum procedural protections required by *Wolff*, the BOP disciplinary procedures, as set forth in 28 C.F.R. § 541.17, require the following: (1) 24-hour advance written notice of the charge before the inmate's initial appearance before the DHO (this right may be waived), 541.17(a); (2) an inmate shall be provided a staff representative at the DHO hearing, if so desired, 541.17(b); (3) an inmate is entitled to make a statement and to present documentary evidence at the DHO hearing; the inmate may also call witnesses to testify on his behalf, 541.17( c); (4) the inmate is entitled to be present throughout the hearing, 541.17(d); (5) the DHO must prepare a record of the proceedings that documents the advisement of the inmate's rights, the DHO findings, the DHO decision, the specific evidence relied

11

upon by the DHO, and a brief statement of the reasons for the imposition of sanctions,

541.17(g); (6) a written copy of the DHO's decision and disposition is to be provided

to the inmate within 10 days, 541.17(g).  The Court must next determine if the BOP's

procedures meet or exceed the due process requirements for prison disciplinary

proceedings as prescribed by the Supreme Court in *Wolff*.

BOP Program Statement 5270.07, Inmate Discipline & Special Housing Units,

states in pertinent part:

> f. The DHO shall consider all evidence presented at the hearing.
> The decision of the DHO shall be based on at least some facts, and if
> there is conflicting evidence, it must be based on the greater weight of
> the evidence.  The DHO shall find that the inmate either:
>
> (1) Committed the prohibited act charged and/or a similar
> prohibited act if reflected in the Incident Report; or
>
> (2) Did not commit the prohibited act charged or a similar
> prohibited act if reflected in the Incident Report. (Emphasis added).

As seen from Program Statement 5270.07, in order to support the loss of good

time credits, the DHO's decision need not comport with the requirement of proof

beyond a reasonable doubt, the standard applicable to criminal trials.    In

*Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445 (1985), the Supreme Court set

out the constitutional evidentiary standard to be used when courts review prison

discipline decisions.  The Court held that the Due Process Clause is satisfied if there

is "some evidence" to show that the inmate committed some offense. *Hill*, 472 U.S. at 455. The Court declined to adopt a more stringent evidentiary standard as a constitutional requirement, stating: "Prison disciplinary proceedings take place in a highly charged atmosphere, and prison administrators must often act swiftly on the basis of evidence that might be insufficient in less exigent circumstances. The fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact." *Id.* at 456.

The "some evidence" standard is a lenient one, requiring no more than "a modicum of evidence," and is met if there is any evidence in the record that could support the [DHO's] decision. *Id.* at 455-56. The "some evidence" standard requires only that the "disciplinary decision is not arbitrary and does have evidentiary support." *Id.* at 457. *See Hatch v. Wilson, supra.* (The District Court denied a Petition for Writ of Habeas Corpus alleging a violation of due process rights for failure to call a witness on petitioner's behalf; record revealed "some evidence" supporting the DHO conclusions). *See also Kuttab v. Jeter*, 132 F. Appx. 23, 2005 WL 1170464 (5thCir. 2005)(Because the disciplinary decisions were supported by some evidence, [Petitioner] has not shown that the disciplinary sanctions were arbitrary or capricious.)

13

The Supreme Court noted in *Hill* that ascertaining whether this standard [some evidence] is satisfied does not require examination of entire record, independent assessment of the credibility of witnesses, or the weighing of the evidence. Instead, the relevant question is whether there is any evidence in the records that could support the conclusion reached by the DHO. *Hill*, 472 U.S. at 455-56. Thus, upon review of a disciplinary proceeding, the district court should determine only whether the DHO's decision to revoke good time credits has some factual basis, *i.e.*, the court should only consider whether there is any evidence that could support the finding. *Id. See also Hatch v. Wilson, supra,* at 4 ("The threshold requirement of 'some evidence' is a relatively low one"); *Reeves v. Pettcox*, 19 F.3d 1060, 1062 (5th Cir.1994) ("[P]rison disciplinary proceedings will be overturned only where there is no evidence whatsoever to support the decision of prison officials"). "The court is not free to retry the disciplinary charge and substitute its opinion for that of the [DHO]." *Novey v. Fed. Bureau of Prisons*, No. 1:06-CV-508, 2008 WL 4280342, 2 (E. D. Tex. 2008). *See also Sarmineto v. Hemingway*, 93 F.Appx. 65, 68 (6th Cir.2004) (Credibility determinations of hearing officers cannot be disturbed on appeal.)

Therefore, the requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board to revoke good-time credits.

14

*Hill*, 472 U.S. at 455 (It is not the court's role to "second guess the disciplinary board's factual findings or decisions"). *See also Humphreys v. Hemingway*, 77 F. Appx. 788, 789 (6th Cir.2003) (Because the DHO's decision is supported by "some evidence" in the record, petitioner is not entitled to habeas relief on his claim); *Bachelder v. Patton*, No. 06-cv-148-HRW,   2007 WL 108415(E.D.Ky. 2007) (Petitioner challenged the sufficiency of the evidence upon which he was convicted in a disciplinary hearing.  Court found that "the law is clear that a DHO need not accept what the inmate perceives to be the 'best evidence' or the most convincing or persuasive set of facts: . . ., there need only be 'some evidence' to support disciplinary decision."); *Laor v. Fed. Bureau of Prisons*, No. 08-3532 (RBK), 2009 WL 1410728 (D.N.J. 2009) (The DHO report plainly shows that it was not so devoid of evidence that the findings of the DHO were without support or otherwise arbitrary.); *Sinde v. Gerlinski*, 252 F.Supp. 2d 144, 150 (M.D. Pa.2003) ("If there is 'some evidence' to support the decision of the hearing examiner [DHO], the court must reject any evidentiary challenges by the plaintiff"). "Due process 'does not require evidence that logically precludes any conclusion but the one reached by the disciplinary board [DHO]', and a disciplinary finding can be upheld on even 'meager' evidence, as long as 'the record is not devoid of evidence that the findings of the disciplinary board [DHO] were without support or otherwise arbitrary.'" *Hill*, 472 U.S. at 457.

15

Based on the foregoing case law, the Court concludes that the BOP's procedures meet or exceed the due process requirement for prison disciplinary proceedings as prescribed by the Supreme Court in *Wolff* and its progeny.

The Court must next consider whether the BOP observed each of these due process requirements during the course of charging and processing the disciplinary offense at issue:

First, Hampton received ample advance notice of the charge against him. The Incident Report was delivered on the date of the incident, May 12, 2009, and following the investigation of the Incident Report, Hampton was provided with notice of the hearing before the DHO and was advised of his rights. The UDC hearing was conducted on May 15, 2009, three days after Hampton received the Incident Report.

Second, Hampton was offered the opportunity to have a staff representative present at the DHO hearing. He exercised that right and requested to have Case Manager B. Shoulders as his staff representative at the DHO hearing. On May 27, 2009, the date of the DHO hearing, Hampton was again advised of his rights and was informed that his staff representative, Case Manager B. Shoulders, could not appear at the hearing. For this reason, prison officials offered to postpone the DHO hearing so that he could obtain another staff representative. Hampton elected to waive his

16

right to have a staff representative present at the DHO hearing and stated to the DHO

that he was ready to proceed.

Third, Hampton had an opportunity to make a statement and to call witnesses

to testify on his behalf during the DHO hearing. While Hampton did not request any

witnesses during the DHO hearing, he denied the charges and made the following

statement to the DHO: 1) "They [razor blades] were not mine." 2) "I didn't know

they were there;" 3) and "I knew he had them to cut food."

Fourth, Hampton was allowed to be present throughout the DHO hearing.

Fifth, the DHO prepared a record of the proceedings that documented the

advisement of the inmate's rights, the DHO's findings, the DHO decision, the specific

evidence relied upon by the DHO, and a brief statement of the reasons for the

imposition of sanctions.

Finally, the DHO made a decision on May 27, 2009, and a written copy of the

DHO's decision and disposition was provided to him on June 24, 2009. Even though,

28 C.F.R. § 541.17(g) requires the DHO to ordinarily give the inmate a written copy

of the decision and disposition within ten days of the DHO decision, if a prisoner

does not receive the DHO report within ten days of the decision, the prisoner is not

entitled to habeas relief, so long as the delay had no prejudicial effect on the

prisoner's administrative remedies. *See Mitchell v. Zych*, No. 2:09-CV-12551, 2009

17

WL 3497796, * 4 (E.D.Mich. 2009), citing *Cook v. Warden, Fort Dix*, 241 Fed. Appx. 828, 829 (3rd Cir.2007). In the present case, the delay in providing the DHO report had no negative effect on Hampton's ability to file and exhaust timely administrative remedies.

Based on the foregoing, the Court concludes that the BOP observed the required procedures and that there was no denial of Hampton's due process rights. Therefore, Hampton's allegations of a due process violation are without merit. The Court also concludes that there was sufficient evidence to support the charge and the sanctions imposed against Hampton. To reiterate, the Supreme Court has held that procedural due process is not satisfied unless the findings of the DHO are supported by some evidence in the record. *Hill* at 454-55. The DHO report demonstrates that the DHO considered and relied upon the following evidence in his determination that Hampton had violated Code 104, Possession, Manufacture or Introduction of a Weapon: (1) the written statement of the reporting staff member, J. Siciliano, Senior Officer Specialist; (2) the May 12, 2009, Incident Report; (3) the investigation of the Incident Report; and (4) Hampton's verbal statement made at the DHO hearing. Thus, the DHO report demonstrates that there was more than "some evidence", in compliance with *Hill*, to support the DHO's finding of guilt and imposition of sanctions. *See Cosgrove v. Rios*, No. 7:08-CV-109-KKC, 2008 WL 4706638

18

(E.D.Ky. 2008) (Court found that DHO review of reports and memoranda constituted "some evidence" and was enough to support the DHO's conclusion and decision to revoke inmate's GTC, impose disciplinary segregation, and loss of privileges). There is ample evidence, more than just "some evidence," to support the DHO's findings, and there no indication of falsified evidence.

In conclusion, there has been no violation of Hampton's due process rights, and there was sufficient evidence to support the DHO's disciplinary sanctions. Hampton has failed to establish that he is entitled to habeas relief.

## CONCLUSION

Accordingly, **IT IS ORDERED** as follows:

(1) The habeas petition filed by Kenneth Hampton, pursuant to 28 U.S.C. § 2241, [D. E. 2] is **DENIED**;

(2) This action is **DISMISSED WITH PREJUDICE**; and,

(3) Judgment shall be entered contemporaneously with this Memorandum Opinion and Order in favor of Respondent, J. C. Holland, Warden.

This 9th day of May, 2012.



Signed By:
Henry R. Wilhoit, Jr.
United States District Judge

19